(Lucas County, Ohio, Court of Common Pleas.)

THE CITY OF TOLEDO v. THE NORTH-WESTERN OHIO NATURAL GAS COMPANY.

(1). Before the passage of the act of 1889 (sec. 2478, R. S., which gave power to cities, etc., to regulate the price of natural gas to be furnished within the city by gas companies) the city council of Toledo had only power to fix the price of such gas by contract with the gas companies, and the passage of the ordinance of 1886, by it, fixing the price of natural gas to be furnished its citizens, and the acceptance of the terms thereof, by the gas companies, constituted a contract; and the gas companies having expended large sums of money in pursuance of such contract in purchasing gas lands and wells and in laying pipes to bring such gas to Toledo before the passage of sec. 2478, R. S., that statute cannot be held to change the contract relation between the city of Toledo and the gas companies, established by their agreement, and which remains binding upon the parties thereto.

(2). Such ordinance containing the express requirement that the Gas Cos. shall furnish gas to all persons requiring it in the city so far as the company may be able, without preference or favoritism, on equal terms and at reasonable prices, neither company could lawfully make and enforce a sale at prices that would be unequal, unreasonable or extortionate, though the common council should unite with the gas companies in approving such schedule.

(3). By the terms of such ordinance as accepted by the Gas Cos. the city council and the Gas Companies, acting together by agreement, may adjust a scale of prices for gas which shall be reasonable, not extortionate and shall operate equally upon all the citizens of Toledo. And while the Gas Co's. furnish gas to the city of Toledo or any of its citizens, the duty is imposed on them to agree with the common council upon equal and reasonable rates and terms, and should such duty be disregarded by them, the court may exact obedience to such contract duty by mandatory injunction.

LEMMON, J.

This action was brought by the city solicitor in behalf of the city of Toledo against the Northwestern Ohio Natural Gas Co. to seek, by the process of injunction, in this court, to compell the defendant to obey the ordinance of the city passed August 4, 1890, and which ordinance the plaintiff claimed was binding on the defendant. A preliminary injunction was granted upon the filing of the petition, giving the relief prayed for until the further hearing of the case, and subsequently, the plaintiff came into court and asked for an additional order, having amended his petition, and, in this amended petition, prays for a mandatory injunction requiring the defendant to furnish gas to all citizens of Toledo who may demand the same, at and for the rate fixed by the ordinance of the common council, August 4, 1890. The plaintiff claims that this ordinance is binding upon the defendant and all the citizens of Toledo, in pursuance of a statute which was passed in March, 1889.

An answer has been filed in the case, and the plaintiff has filed a reply to the answer; but, for the present, we will content ourselves with an examination of the petition alone, and of the claim that is made under it for relief.

The history of the connection of the Northwestern Ohio Natural Gas Co. with the piping of gas through the streets of the city and furnish-

ing it to the citizens of Toledo, is a matter so well known that no reference need be made to it here, and the ordinance and ordinances which were passed and accepted by the North-western Ohio Natural Gas Co. have been so frequently discussed and so many times before the public in print, that I need not state anything in that regard.

The following propositions appear to us to disclose sufficiently the opinion to which the court has arrived.

1. Before the passage of the act of March, 1889, now section 2478, Reivsed Statutes, the city council of Toledo possessed no right to regulate the price of natural gas—or, to speak more accurately, the legislature had not before that time conferred upon city councils the power to regulate the price, etc., of natural gas—and hence the ordinance of September 6, 1886, when accepted by the Natural Gas Companies, including the provision which secures the right to further regulate the furnishing of gas upon such terms as the common council and the gas companies might thereafter determine, became a contract between the city of Toledo and the gas companies, binding upon the parties until revoked or terminated by them.

This case must be distinguished from those where the contract was made with a gas company at a time when the statute empowering common councils to regulate the price of gas was in force: in this case it cannot be said that the contract made, was in violation of law, or of the expressed policy of the state.

2. The ordinance of the common council of Toledo, passed September 6, 1886, before the common council had the power to regulate the price of gas otherwise than by contract, having been accepted by the natural gas companies before the passage of the act of March, 1889, now section 2478, Revised Statutes, which authorized common councils to regulate from time to time the price of natural gas as well as manufactured gas, by ordinance—and the gas companies having expended large sums of money in pur-suance of such contract in purchasing gas lands and wells and in laying pipes to bring such gas to Toledo before the passage of the act of March, 1889, that statute cannot be held to change the contract relation between the city of Toledo and the gas companies, established by their agreement and binding upon the parties thereto at and before the passage of the act of March, 1889. To construe the statute as applying to and governing the parties to this contract as subordinating the contract and altering the contract rights of the parties, would be holding the statute invalid under the constitution of the United States and the constitution of the state of Ohio, because of its impairing (when so construed) the obligation of contracts.

3. The contract so made (section 8 of the ordinance) provided that "The right to further regulate the furnishing of natural gas to consumers shall be subject to such terms and conditions as the common council and the gas companies may hereafter determine upon." The meaning of the above words is made more clear by those immediately following: "This ordinance and all rights herein granted shall be subject to any general ordinance or ordinances which may hereafter be adopted by the common council, regulating the mode and manner of laying, relaying and repairing the mains and pipes, conductors, connections and drips and the conducting of gas through the streets, lanes, alleys, squares, docks and lands of said city not inconsistent with the provisions of this ordinance." While thus particularly mentioning what the common council might by general ordinance thereafter do, specifying what the common council might thereafter regulate in the exercise of its control of the streets, lanes, alleys, squares and docks, it would have been an easy matter to have added, if the parties then in negotiation had so intended, the words "and to fix and adjust a schedule of the price to be charged consumers" etc.

4. In this connection we may as well notice section 9 of the ordinance

granting franchise to the Toledo Natural Gas Co. which contains the express requirement that the Toledo Natural Gas Co. shall furnish gas to all persons requiring it in the city so far as the company may be able, without preference or favoritism, on equal terms and at reasonable prices.

This express provision we regard as but declaratory of the common law which inheres in all contracts without express statement—and hence the Northwestern Ohio Natural Gas Co. has the same measure of right and is bound to the same duties and to the same extent as the Toledo Natural Gas Co., those matters being implied though not expressed in. their contract. Neither company could lawfully make and enforce a scale of prices that should be unequal, unreasonable or extortionate, though the common council should unite with the gas companies in approving such schedule.

Chief Justice Waite, in Munn v. Illinois, 94 U. S., 113, on this subject, says:

"When, therefore, one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use and must submit to be controlled by the public for the common good to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but so long as he maintains the use he must submit to the control."

Numerous authorities are cited by the court in support of this proposition, from Lord Hale down to the present time, in which the right to regulate wharfage, ferriage, drayage, hacks, carriages, stages, railway companies, steam boat companies, warehouse men, gas companies, bakers, millers, inn-keepers. etc. etc., has been asserted continuously as the right of the sovereign, or of the public through its constituted authorities, with the view of securing equality between patrons and protection from unreasonable exorbitant as well as unequal charges. These principles of elementary justice have accompanied our forefathers in their rugged and honest lives in their development from age to age, and have been amplified in their application to improved methods of motion and new species of property.

5. The contract between the city and the gas companies growing out of the acceptance of the ordinances passed September 6, 1886, whereby it was declared that "The right to further regulate the furnishing of natural gas to consumers shall be subject to such terms and conditions as said common council and said company may hereafter determine, subject to the limitation imposed by law, that the same should be reasonable, not unequal and not extortionate," empowers the city council and the defendant, acting together by agreement, to adjust a scale of prices for gas which shall be reasonable, not extortionate and shall operate equally upon all the citizens of Toledo. And while defendant furnishes gas to the city of Toledo or any of its citizens, the duty is imposed on defendant to agree with the common council upon equal and reasonable rates and terms, and should such duty be disregarded by defendant, the court may exact obedience to such contract duty by mandatory injunction, upon proper petition and sufficient showing.

This brings us to the final question: Does the petition contain a statement of such facts as warrant the court in granting a mandatory injunction as prayed for in the amended petition?

The petition does not state, and it is not claimed that the defendant after the common council and the defendant had agreed upon a schedule of prices for gas to be furnished the citizens of Toledo which was reasonable, refused to furnish gas to citizens demanding it at the rates so fixed during the term covered by such agreement.

Nor that the common council of Toledo have proposed to defendant a schedule or schedules of prices to be charged for natural gas, that was equal and reasonable, and that defendant refused to entertain such proposals, and refused to confer or negotiate with the common council in regard thereto.

The petition does state that the common council, on August 4, 1890, passed an ordinance fixing the price to be charged by defendant for gas to be furnished to the citizens of Toledo and to the city of Toledo; that the rates so fixed were reasonable, and that the defendant refused to recognize said ordinance or to be bound thereby, and that defendant proposed to the citizens of Toledo (its customers) to furnish them gas at a price in excess of that fixed by the common council, to-wit: at the rate of twelve cents per thousand feet, being two cents per thousand feet more than was allowed by the ordinance of the common council passed August 4, 1890, and now in force.

The petition proceeds on the assumption that the common council, from and after the passage of the statute of March, 1889, section 2478, Revised Statutes, had and possessed the sole right and power to fix and regulate the price which might be charged by defendant to the citizens of Toledo and to the city of Toledo, and that the rate and price so fixed would be deemed reasonable and lawful to be charged and collected, unless defendant could successfully allege fraud or mistake on the part of the council, or a desire and purpose on their part to wrongfully oppress defendant.

This view, it may be briefly said, is one which cannot be allowed by us, and the motion for an additional order requiring defendant to furnish gas to the citizens of Toledo, and to the city of Toledo at the rates fixed by the common council August 4, 1890, must be overruled.

The motion by defendant to dissolve the injunction granted herein at the commencement of this action, is sustained.